DAVID N. WOLF (6688)
LANCE SORENSON (10684)
JASON DUPREE (17509)
Assistant Utah Attorneys General
OFFICE OF THE UTAH ATTORNEY GENERAL
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (385) 564-3926
dwolf@agutah.gov
lancesorenson@agutah.gov
jndupree@agutah.gov

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NOVARTIS PHARMACEUTICALS CORPORATION, <br><br> *Plaintiff*, <br><br> v. <br><br> DEREK BROWN, in his official capacity; and JOHN PIKE, in his official capacity, <br><br> *Defendants*. | **DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c)** <br><br> Case No. 2:25-cv-00284-RJS-DAO <br><br> Judge Robert J. Shelby <br><br> Magistrate Judge Daphne A. Oberg |

# TABLE OF CONTENTS

RELIEF SOUGHT AND GROUNDS FOR MOTION ................................................................. 1

BACKGROUND .................................................................................................................... 3

    1. Congress established Section 340B to shield Covered Entities from drug price increases and help Covered Entities provide more services.................................................................. 3

    2. 340B regulates price, but not delivery ....................................................................... 4

    3. HRSA recognizes that a Covered Entity using multiple contract pharmacies helps fulfill the 340B Program's aims ............................................................................................... 5

    4. Drug manufacturers convince federal courts that HHS does not have authority to regulate manufacturers' delivery policies ........................................................................ 6

    5. Utah's law ................................................................................................................. 7

    6. The Utah Legislature amends Section 311 after this Court's ruling ..................................... 10

LEGAL STANDARD ........................................................................................................... 10

ARGUMENT ....................................................................................................................... 11

    1.    Novartis' field preemption claim in Count I is dismissed........................................... 11

    2.    Novartis' conflict preemption claim should be dismissed ........................................... 12

        2.1.    Section 311 does not entitle contract pharmacies to 340B prices........................ 14

        2.2.    Utah's enforcement of delivery does not conflict with HHS' enforcement of 340B ............................................................................................................... 16

        2.3.    Novartis can obtain claims data consistent with federal law ............................... 21

CONCLUSION.................................................................................................................... 27

CERTIFICATE OF SERVICE ............................................................................................... 28

## TABLE OF AUTHORITIES

Page(s)

Cases

*AbbVie Inc. v. Drummond*,
  No. CIV-25-1156-PRW, 2025 WL 3048929 (W.D. Okla. Oct. 31, 2025) ......................... 25, 26

*AbbVie, Inc. v. Fitch*,
  152 F.4th 635 (5th Cir. 2025) ....................................................................................... 14, 18

*AbbVie, Inc. v. Murrill*,
  No. 24-30645, 2026 WL 350685 (5th Cir. Feb. 9, 2026) ........................................................ 5

*AbbVie Inc. v. Skermetti*,
  3:25-CV-00519, 2025 WL 1805271 (M.D. Tenn. June 30, 2025) ........................... 20, 23, 24, 27

*AbbVie, Inc. v. Weiser*,
  No. 25-CV-1847-WJM-KAS, 2025 WL 3041825 (D. Colo. Oct. 31, 2025) ....................... 4, 15

*Am. Hosp. Ass'n v. Becerra*,
  596 U.S. 724 (2022) ............................................................................................................. 3

*Arizona v. United States*,
  567 U.S. 387 (2012) ........................................................................................................... 12

*Astra USA, Inc. v. Santa Clara Cnty., Cal.*,
  563 U.S. 110 (2011) ......................................................................................................... 3, 4

*Bates v. Dow Agrosciences LLC*,
  544 U.S. 431 (2005) ........................................................................................................... 14

*Bradshaw v. Am. Airlines, Inc.*,
  123 F.4th 1168 (10th Cir. 2024) ......................................................................................... 13

*California v. ARC Am. Corp.*,
  490 U.S. 93 (1989) ............................................................................................................. 13

*Chamberlan v. Ford Motor Co.*,
  314 F. Supp. 2d 953 (N.D. Cal. 2004) ....................................................................... 13, 21, 27

*Cipollone v. Liggett Grp., Inc.*,
  505 U.S. 504 (1992) ............................................................................................... 12, 13, 21, 27

*Cook v. Rockwell Int'l Corp.*,
  618 F.3d 1127 (10th Cir. 2010) ......................................................................................... 12

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ........................................................................................... 23

*Day v. SkyWest Airlines*,
45 F.4th 1181 (10th Cir. 2022) .......................................................................... 12

*Dr. A. v. Hochul*,
586 F. Supp. 3d 136 (N.D.N.Y. 2022) ............................................................... 14

*Dunham v. Saratoga Springs City*,
No. 2:19-cv-00641, 2020 WL 5057606 (D. Utah Aug. 27, 2020)....................... 11

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000) ..................................................................................... 12, 27

*Genesis Health Care, Inc. v. Becerra*,
701 F. Supp. 3d 312 (D.S.C. 2023)..................................................................... 4, 12

*Hillsborough Cnty., v. Automated Med. Lab'ys, Inc.*,
471 U.S. 707 (1985) ........................................................................................... 12

*Kondash v. Kia Motors Am., Inc.*,
No. 1:15-CV-506, 2016 WL 11246421 (S.D. Ohio June 24, 2016) ......................... 14

*Novartis Pharms. Corp. v. Johnson*,
102 F.4th 452 (D.C. Cir. 2024) ....................................................................Passim

*Novartis v. Espinosa*,
No. 2:21-cv-1479, 2021 WL 5161783 (D.D.C. Nov. 5, 2021) .................................. 7

*Novartis v. Frey*,
No. 1:25-cv-00407-JCN, 2025 WL 2813787 (D. Me. Sept. 23, 2025) ....... 15, 16, 25

*Oregon Health & Science University v. Engels*,
2025 WL 1707630 (D.D.C. June 17, 2025)............................................................ 19

*Paul v. Monts*,
906 F.2d 1468 (10th Cir. 1990).......................................................................... 15

*PhRMA v. Bailey*,
No. 2:24-cv-04144-MDH, 2025 WL 644281, (W.D. Mo. Feb. 27, 2025)................. 24

*PhRMA v. Fitch*,
No. 1:24-cv-160, 2024 WL 3277365 (S.D. Miss. July 1, 2024)............................. 18

iv

*PhRMA v. Frey*,
No. 1:25-cv-00469, 2026 WL 184504 (D. Me. Jan. 23, 2026)................................27

*PhRMA v. McClain*,
95 F.4th 1136 (8th Cir. 2024)........................................................................3, 17

*PhRMA v. Morrisey*,
760 F. Supp. 3d 439 (S.D.W. Va. 2024)....................................19, 20, 25, 26

*PhRMA v. Walsh*,
538 U.S. 644 (2003) ............................................................13, 14, 15, 18

*Pueblo of Pojoaque v. State*,
233 F. Supp. 3d 1021 (D.N.M. 2017) ............................................14

*Ramsey Winch Inc. v. Henry*,
555 F.3d 1199 (10th Cir. 2009)........................................................13

*Sanofi Aventis v. HHS*,
58 F.4th 696 (3d Cir. 2023).................................................3, 6, 7, 17

*Sikkelee v. Precision Airmotive Corp.*,
822 F.3d 680 (3d Cir. 2016).............................................................14

<u>Statutes</u>

42 U.S.C. Sec. 256b(a)(4) ...........................................................2, 3, 10, 14

42 U.S.C. § 256b ................................................................................3, 10

42 U.S.C. § 256b(a)(1), (a)(4)...................................................................3

42 U.S.C. § 256b(d)(2)(B)(v) ..................................................................18

42 U.S.C. § 256b(d)(2)(B)(v)(II) .......................................................18, 22

42 U.S.C. § 256b(d)(3) ...............................................................5, 17, 22

42 U.S.C. §§ 256b(a)(1)-(2), 1396r-8(c)................................................4, 5

Utah Code § 31A-46-311 ...............................................................Passim

Utah Code § 31A-46-311(1)(a) ...................................................2, 10, 14

Utah Code § 31A-46-102(3) .......................................................................9

Utah Code § 31A-46-311(1)(b) ................................................................................ 10

Utah Code § 31A-46-311(2)(b)(ii) ........................................................................... 22

<u>Regulations</u>

42 C.F.R. § 10.21 .................................................................................................... 17

42 C.F.R. § 10.21(2) ................................................................................................. 5

*340B Drug Pricing Program; Administrative Dispute Resolution Regulation,*
    89 Fed. Reg. 28,643 (April 19, 2024) .......................................................... 23, 24

*Manufacturer Audit Guidelines and Dispute Resolution Process,*
    61 Fed. Reg, 65,406 (Dec. 12, 1996) ................................................... 19, 22, 24

*Notice Regarding 340B Contract Pharmacy Services,*
    75 Fed. Reg. 10272 (Mar. 5, 2010) ...................................................................... 4

*Notice Regarding Contract Pharmacy Services,*
    61 Fed. Reg. 43,549 (Aug. 23, 1996) .................................................................. 5

<u>Other Authorities</u>

H.B. 356 ............................................................................................................... 2, 10

H.R. Rep. No. 102-384 ........................................................................................ 4, 12

Senate Bill 69 ..................................................................................................... Passim

Defendants Derek Brown and Jon Pike, in their official capacities, submit this Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c), in light of recent amendments to the law at issue in this case.

## RELIEF SOUGHT AND GROUNDS FOR MOTION

Novartis claims that Utah's S.B. 69, passed in 2025 and codified at Utah Code § 31A-46-311, is preempted by the federal 340B statute. Novartis brings a field preemption claim, and asserts three arguments in support of its conflict preemption claim. Defendants previously moved for full dismissal of Novartis' Complaint. This Court dismissed Novartis' field preemption claim because 340B only regulates drug pricing and S.B. 69 regulates drug distribution—an area on which 340B is silent.[1]

The Court next addressed Novartis' first conflict preemption argument. The Court found that Novartis stated a plausible conflict preemption claim that S.B. 69 expands Novartis' obligations to provide 340B pricing to entities other than those explicitly enumerated by Congress. The Court stated that under S.B. 69, a "340B entity" is not equivalent to "Covered Entities" as defined in the 340B statute. Utah statute defined "340B entity" as including pharmacies, and under Utah law, pharmacies are not restricted to entities that distribute medications. The Court interpreted S.B. 69 as permitting the sale of 340B drugs at 340B prices to entities beyond Covered Entities as defined by Section 340B.[2] The Court did not address Novartis' two other conflict preemption arguments.[3]

The Utah Legislature acted quickly. The Legislature enacted H.B. 356, which amended Utah Code § 31A-46-311 ("Section 311"). H.B. 356 removed Section 311's reference to "340B

---

[1] Order on Defs.' Mot. to Dismiss, ECF No. 89, at 14-18.
[2] *Id.* at 19-21.
[3] *Id.* at 19 n.117.

1

entity."  H.B. 356 amended Section 311 to use the term "340B covered entity."  And Section 311, as amended by H.B. 356, defines "340B covered entity" as "the same as the term 'covered entity' is defined in 42 U.S.C. Sec. 256b(a)(4)."  Utah Code § 31A-46-311(1)(a).  Accordingly, in Section 311, a "340B covered entity" is equivalent to "Covered Entities" as defined in the 340B statute.

Defendants now move for judgment on the pleadings.  The Court's previous ruling identified the statutory basis on which Novartis stated a plausible preemption claim.  The Utah Legislature has amended the statute to cure the issue identified by this Court to remove all doubt that Utah law aligns with the federal 340B statute regarding who is allowed to purchase prescription drugs at a discount.  This claim should now be dismissed.

Novartis' other two conflict preemption arguments also fail.  Novartis claims that state enforcement of Section 311 conflicts with federal enforcement of 340B.  But the laws address different matters.  Section 311 addresses delivery.  And as Novartis has convinced the D.C. Circuit, HHS has no statutory authority to address this issue.  *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452 (D.C. Cir. 2024).  Finally, Novartis fails to plausibly allege that Section 311 stands as some kind of obstacle to Novartis accessing HHS' ADR process.

Novartis has maintained that there are no disputed facts at issue in this case and that the Court should quickly resolve this case.  Defendants' Motion is the perfect vehicle for this Court to do so.  The Court should enter judgment for Defendants.

# BACKGROUND

## 1. Congress established Section 340B to shield Covered Entities from drug price increases and help Covered Entities provide more services

340B is a pharmaceutical pricing program that caps drug prices sold to specified health-care facilities.[4]  42 U.S.C. § 256b.  The 340B Program is administered by the Secretary of Health and Human Services ("HHS") and superintended by the Health Resources and Services Administration" ("HRSA," an HHS agency).  *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 113 (2011); 42 U.S.C. § 256b.  If a manufacturer wishes to sell their products to Medicare and Medicaid patients, the manufacturer must participate in the 340B Program.  *Sanofi Aventis v. HHS*, 58 F.4th 696, 699 (3d Cir. 2023).  The 340B Program requires manufacturers to sell drugs at discounted prices to "covered entities."  42 U.S.C. § 256b(a)(1), (a)(4).

Covered Entities are defined by statute to include fifteen different types of healthcare facilities.[5]  42 U.S.C. § 256b(a)(4).  Covered Entities "include public hospitals and community health centers, many of them providers of safety-net services to the poor."  *Astra*, 563 U.S. at 113.  Covered Entities "'perform valuable services for low-income and rural communities but have to rely on limited federal funding for support,' and the 340B Program was designed in part to support this work."  *PhRMA v. McClain*, 95 F.4th 1136, 1141 (8th Cir. 2024) (quoting *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 738 (2022)).

Congress enacted Section 340B in response to pharmaceutical manufacturers increasing drug prices, and Congress sought to protect Covered Entities from such increases.[6]  Congress intended that Covered Entities use the savings from purchases of 340B drugs "to stretch scarce

---

[4] Compl., ECF No. 1, ¶ 28.
[5] Compl. ¶ 29.
[6] Compl. ¶¶ 2, 27.

Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services." H.R. Rep. No. 102-384, pt. 2, at 12 (1992). "The 340B Program accomplishes this by 'impos[ing] ceilings on prices drug manufacturers may charge for medications sold to specified health-care facilities.'" *AbbVie, Inc. v. Weiser*, No. 25-CV-1847-WJM-KAS, 2025 WL 3041825, at *1 (D. Colo. Oct. 31, 2025) (quoting *Astra,* 563 U.S. at 113).

"340B entities are able to stretch these scarce Federal resources because they receive their drugs at a discount and are reimbursed by insurers at the non-discounted price of the drug, thereby increasing the 340B entity's profit margin. This allows 340B entities to provide more services to a larger population of under-served patients." *Genesis Health Care, Inc. v. Becerra*, 701 F. Supp. 3d 312, 316 (D.S.C. 2023). The 340B Program does not mandate how Covered Entities must use the savings realized from the 340B Program; Covered Entities use the funds as they "see[] fit," including to "pay contract pharmacies for their services or for extra services such as delivery." Notice Regarding 340B Contract Pharmacy Services, 75 Fed. Reg. 10272, 10277 (Mar. 5, 2010) (hereinafter, "2010 Guidance").

**2. 340B regulates price, but not delivery**

The 340B Program has three components. First, pricing. Section 340B requires manufacturers to sell drugs to Covered Entities at a discounted ceiling price, which is determined by a statutory formula. 42 U.S.C. §§ 256b(a)(1)-(2), 1396r-8(c). Second, 340B contains two restrictions on Covered Entities. Covered Entities cannot engage in diversion; meaning, they cannot "resell or otherwise transfer" discounted drugs "to a person who is not a patient of the entity." *Id.* § 256b(a)(5)(B). And Covered Entities cannot obtain duplicate discounts – they cannot obtain Medicaid rebates for drugs they purchased at a 340B discount. *Id.* § 256b(a)(5)(A)(i). Finally, the 340B Program includes compliance and enforcement mechanisms for pricing violations. HHS enforces drug manufacturers' duty to sell discounted drugs and

Covered Entities' duties not to seek improper discounts or make improper resales. *See id.* § 256b(d).

When pricing, diversion, or discount disputes arise between manufacturers and Covered Entities, parties must go through HHS' dispute resolution process to resolve the issue.[7] 42 U.S.C. § 256b(d)(3). HHS and drug manufacturers are authorized to audit Covered Entities to ensure compliance with the diversion and duplicate rebate provisions. *Id.* § 256b(a)(5)(C). But an audit shall be "at the Secretary's or the manufacturer's expense." *Id.* HHS promulgated a rule establishing that the claims manufacturers and Covered Entities can bring through the ADR process "are limited to" overcharges, duplicate discounts, and diversion. 42 C.F.R. § 10.21(a).

### 3. HRSA recognizes that a Covered Entity using multiple contract pharmacies helps fulfill the 340B Program's aims

"From the program's inception, Congress has said nothing about how discounted drugs must be dispensed." *AbbVie, Inc. v. Murrill*, No. 24-30645, 2026 WL 350685, at *2 (5th Cir. Feb. 9, 2026). Since the 1990s, Covered Entities have contracted with outside pharmacies to handle the acquisition, distribution, and dispensation of 340B drugs. *See* Notice Regarding Contract Pharmacy Services, 61 Fed. Reg. 43,549, 43,550 (Aug. 23, 1996) (hereinafter "1996 Guidance").[8] HRSA recognized that because pharmacy construction and operations are expensive and require special expertise, many Covered Entities cannot own in-house pharmacies. *Id.*

HRSA issued guidance in 1996 permitting Covered Entities to contract with a single third-party commercial pharmacy to receive and dispense Section 340B drugs to their patients. Under a contract pharmacy arrangement, "the covered entity purchases the drug, the

---

[7] Compl. ¶ 34.
[8] Novartis' Complaint refers to the 1996 Guidance. Compl. ¶ 112.

manufacturer bills the entity for the drug that it purchased, but ships the drug directly to the contract pharmacy." *Id.* at 43,555. The pharmacy is authorized to "dispense 340B drugs to patients of the covered entity pursuant to a prescription." *Id.* at 43,550. "The mechanism does not in any way extend this pricing to entities which do not meet program eligibility." *Id.* HRSA's 1996 Guidance required that in directing shipments to its contract pharmacy, the Covered Entity must be responsible for any diversion or duplicate discounts. *Id.* at 43,553.

In 2010, HRSA issued new guidance permitting all Covered Entities to contract with an unlimited number of outside pharmacies to distribute Section 340B drugs to their patients. 2010 Guidance at 10,272-73.[9]

## 4. Drug manufacturers convince federal courts that HHS does not have authority to regulate manufacturers' delivery policies

After Covered Entities began using multiple contract pharmacies, drug makers "responded, adopting policies to limit the use of contract pharmacies," including the number of contract pharmacies and the location of the contract pharmacy. *Sanofi*, 58 F.4th at 700-01; *Novartis*, 102 F.4th at 458.

For example, in 2020, Novartis implemented its first contract-pharmacy policy, which allowed Covered Entities to only use contract-pharmacies within 40 miles of the Covered Entity.[10] Novartis then made a more restrictive policy in 2023, refusing to deliver drugs to contract pharmacies if a Covered Entity had an in-house pharmacy, and only allowing a Covered Entity without an in-house pharmacy to select one contract pharmacy.[11]

---

[9] Novartis' Complaint refers to the 2010 Guidance. Compl. ¶ 41.
[10] Compl. ¶ 57
[11] Compl. ¶ 61.

Starting in 2020, Novartis requested that Covered Entities hand over their claims data to Novartis.[12]  Most Covered Entities declined.[13]  Novartis then sought to force the Covered Entities to do so.  Novartis updated its policy on January 1, 2025, requiring contract pharmacies to provide all claims data in order for Novartis to deliver drugs purchased through the 340B program to those pharmacies.[14]

In response to these policies, HHS issued an advisory opinion in December 2020 "stating that section 340B requires manufacturers to deliver covered drugs to any contract pharmacies with which a covered entity chooses to partner." *Novartis*, 102 F.4th at 458.  After drug manufacturers challenged that opinion in federal court, HHS withdrew it.  *Id.*  HRSA changed its strategy and tried to frame the manufacturers' policies as a pricing issue.  In 2021, HRSA sent a letter to Novartis and others, "concluding that their actions have resulted in overcharges and are in direct violation of the 340B statute." *Novartis v. Espinosa*, No. 21-CV-1479 (DLF), 2021 WL 5161783, at *5 (D.D.C. Nov. 5, 2021), aff'd, 102 F.4th 452 (cleaned up).

Novartis and other drug manufacturers again challenged HRSA's authority to regulate delivery.  The D.C. and Third Circuits concluded that "section 340B is 'silent about delivery.'" *Novartis*, 102 F.4th at 461 (quoting *Sanofi*, 58 F.4th at 703).  And those courts held that when HHS tried to regulate delivery, HHS "overstepped the statute's bounds." *Sanofi*, 58 F.4th at 707.  Federal courts thus set aside HHS' enforcement letters.

**5. Utah's law**

In 2025, Utah enacted Senate Bill 69 ("S.B. 69"), codified at Utah Code § 31A-46-311.

---

[12] Compl. ¶¶ 58, 61.
[13] Compl. ¶ 67.
[14] *Id.*

Utah Code § 31A-46-311 regulates what manufacturers (and courts) said Section 340B does not: drug delivery.

Novartis brings this lawsuit, challenging the constitutionality of Section 311. In Count I of its Complaint, Novartis raises a field preemption claim. In Count II, Novartis brings three different conflict preemption arguments. First, Novartis alleges that Section 311 expands Section 340B's scope of drug discounts. Second, Novartis alleges that enforcement of Section 311 conflicts with HHS's enforcement of Section 340B's pricing requirements. Finally, Novartis claims that Section 311's prohibition of manufacturers conditioning receipt of a 340B drug on the provision of claims data conflicts with federal law.

Defendants moved for full dismissal of Novartis' Complaint.[15] This Court considered that Motion to Dismiss along with Defendants' motions to dismiss AbbVie's and PhRMA's complaints in companion cases because all three plaintiffs "advance substantially the same or overlapping claims."[16] The Court addressed the plaintiffs' field preemption claim. The plaintiffs claimed that Section 311 is field preempted because "[t]he 340B program is a comprehensive federal healthcare program," every detail of which "is determined by federal law" and "the federal statute does not authorize state regulation" regarding pricing or access to "discounted 340B prices."[17]

This Court agreed with Defendants that "340B only regulates drug pricing and S.B. 69 regulates drug distribution—an area on which 340B is silent."[18] The Court found that the "340B

---

[15] ECF No. 30.

[16] Order, ECF No. 95 at 3.

[17] Order at 14-15. *Cf.* Novartis' Opp. to Mot. to Dismiss, ECF No. 66 at 10 ("Federal regulation of the 340B Program is pervasive—and nothing . . . suggests Congress left room for states to supplement or extend the federal scheme.").

[18] Order at 15.

statute is silent on any distribution requirements," while "S.B. 69 restricts pharmaceutical companies from imposing distribution conditions on 340B entities."[19]  The Court further found that "S.B. 69 does not change or add to the pricing requirements for manufacturers under the 340B Program."[20]

The Court turned to the plaintiffs' first conflict preemption claim.  The plaintiffs argued that S.B. 69 expands the plaintiffs' obligations to provide access to 340B pricing to entities other than those explicitly enumerated by Congress.[21]  The Court stated that "under S.B. 69, a '340B entity' is not equivalent to 'covered entities' as defined in the 340B statute."[22]  The Court noted that Utah statute defined "340B entity" as including "pharmac[ies] of an entity participating in the 340B drug discount program," and "pharmac[ies] contracting with an entity participating in the 340B drug discount program to dispense drugs purchased through the 340B drug discount program."[23]  The Court found this "legally significant because, under Utah law, pharmacies are not restricted to entities that distribute medications."[24]

The Court thus interpreted S.B. 69 as permitting the sale of 340B drugs at 340B prices to entities beyond Covered Entities as defined by Section 340B.[25]  The Court found this "directly contrary to the 340B Program's purpose" and thus found that the plaintiffs have adequately alleged a conflict preemption claim.  While Defendants moved for dismissal of all Novartis'

---

[19] *Id.* at 17.
[20] *Id.* at 18.
[21] Order at 19.
[22] *Id.* at 20.
[23] *Id.* (citing Utah Code § 31A-46-102(3)).
[24] *Id.*
[25] *Id.* at 21.

conflict preemption claim, the Court did not address Novartis' conflict preemption arguments based on the audit process and enforcement scheme.[26]

### 6. The Utah Legislature amends Section 311 after this Court's ruling

The Legislature then amended Section 311.  On February 27, 2026, Governor Spencer Cox signed H.B. 356, which amended Section 311.[27]  H.B. 356 took effect on February 27, 2026.

As the Court previously noted, S.B. 69 used the term "340B entity," which was not equivalent to "Covered Entities" in the 340B statute.  H.B. 356 removed Section 311's reference to "340B entity."  H.B. 356 amended Section 311 to use the term "340B covered entity."  And Section 311, as amended by H.B. 356, defines "340B covered entity" as "the same as the term 'covered entity' is defined in 42 U.S.C. Sec. 256b(a)(4)."  Utah Code § 31A-46-311(1)(a).  Accordingly, in Section 311, a "340B covered entity" is equivalent to "covered entities" as defined in the 340B statute.

H.B. 356 also added three definitions to Section 311.  First, Section 311 defines "340B eligible drug" as "a drug purchased through the 340B drug discount program, in accordance with 42 U.S.C. Sec. 256b, by a 340B covered entity."  Utah Code § 31A-46-311(1)(b).  Second, Section 311 defines "contracted pharmacy" as "a pharmacy contracting with a 340B covered entity to dispense 340B eligible drugs."  *Id.* § 31A-46-311(1)(c).  And third, Section 311 defines "pharmacy" as "any place where drugs are dispensed."  *Id.* § 31A-46-311(1)(d).

**LEGAL STANDARD**

Defendants move for judgment on the pleadings pursuant to Rule 12(c).  This Court has explained the Rule 12(c) standard as follows:

---

[26] Order at 19 n.117.

[27] https://le.utah.gov/~2026/bills/static/HB0356.html.  A copy of H.B. 356 is attached as Exhibit 1 to this Motion.

A Rule 12(c) motion is subject to the same standards as a Rule 12(b)(6) motion. Thus, to survive judgment on the pleadings, a plaintiff must allege a claim to relief that is plausible on its face. To determine plausibility, the court examines the elements of the particular claim and reviews whether the plaintiff has pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. In so doing, the court accepts as true all well-pleaded factual allegations in the complaint, resolves all reasonable inferences in the plaintiff's favor, and asks whether it is plausible that the plaintiff is entitled to relief. Further, the court rejects mere labels and legal conclusions offered by the plaintiff.

*Dunham v. Saratoga Springs City*, No. 2:19-cv-00641, 2020 WL 5057606, at *2 (D. Utah Aug. 27, 2020) (cleaned up).

## ARGUMENT

1.  <u>Novartis' field preemption claim in Count I is dismissed</u>

In Count I, Novartis brings a field preemption claim.[28] This is a separate claim from Novartis' conflict preemption claims in Count II. In this Court's Order, the Court addressed Novartis' claims with AbbVie's claims "[b]ecause AbbVie's claims encompass PhRMa's and Novartis' claims. However, . . . the court's analysis and conclusions apply to all three cases."[29] The Court agreed with Defendants that "the 340B Program is not so comprehensive as to be preempted," and that "340B only regulates drug pricing and S.B. 69 regulates drug distribution—an area on which 340B is silent."[30] For the reasons stated in Defendants' original Motion to Dismiss and Reply, and in this Court's Order, Novartis' field preemption claim in Count I is dismissed.

---

[28] Compl. ¶¶ 133-38.
[29] Order at 11.
[30] *Id.* at 15.

2.    <u>Novartis' conflict preemption claim should be dismissed</u>

Remaining are Novartis' three conflict preemption arguments in Count II.  Conflict preemption occurs "where compliance with both federal and state regulations is a physical impossibility," or "where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Arizona v. United States*, 567 U.S. 387, 399-400 (2012) (cleaned up).  "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects."  *Id.* (cleaned up).

"Put simply, the purpose of the 340B program was to provide a means to make 340B entities profitable in order for those 340B entities to 'stretch scarce Federal resources as far as possible.'"  *Genesis Health Care*, 701 F. Supp. 3d at 316 (quoting H.R. Rep. No. 102-384, pt. 2, at 12 (1992) (congressional intent of 340B is "to enable these entities to stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services.")).

Bringing a preemption claim, Novartis "faces an uphill battle."  *Hillsborough Cnty., v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 714 (1985).  Because Novartis is "the party claiming preemption, it bears the burden of showing with specificity that Congress intended to preempt state law."  *Day v. SkyWest Airlines*, 45 F.4th 1181, 1184 (10th Cir. 2022) (cleaned up).  This burden applies to conflict preemption claims.  *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1143 (10th Cir. 2010).

Conflict preemption requires "the identification of *actual* conflict."  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884 (2000) (emphasis added) (cleaned up).  *See also Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) ("state law is pre-empted if that law actually

conflicts with federal law").  "Speculative or hypothetical conflict is not sufficient: only State law that 'actually conflicts' with federal law is preempted."  *Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 957 (N.D. Cal. 2004) (citing *Cipollone,* 505 U.S. at 516).

And Novartis does not meet its burden to establish that state law is an "obstacle" justifying preemption by showing a state law will merely have some effect on an area addressed by federal law.  *PhRMA v. Walsh*, 538 U.S. 644, 667 (2003) (finding "the mere fact" a state requirement "may impose a modest impediment" to a federal program "does not provide a sufficient basis for pre-emption").  *See also Chamberlan*, 314 F. Supp. 2d at 963 ("some negative effect on" a congressional goal "is not sufficient to constitute the 'clear evidence of conflict; with congressional goals required by *Geier* for conflict preemption").

Moreover, the presumption against preemption applies here.  This Court "begin[s] with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Ramsey Winch Inc. v. Henry*, 555 F.3d 1199, 1204 (10th Cir. 2009) (cleaned up).  "This assumption applies with greater force when the alleged conflict is in an area traditionally occupied by the States."  *Id*.  This Court has already found that Section 311 "impose further requirements in a field related to health and safety—a field traditionally occupied by states."[31]  Accordingly, "because a presumption against preemption applies in this case," Novartis "bears the burden of showing that it was Congress' 'clear and manifest' intent to preempt State law."  *Chamberlan*, 314 F. Supp. 2d at 962 (quoting *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989)).  *See also Bradshaw v. Am. Airlines, Inc.*, 123 F.4th 1168, 1173 (10th Cir. 2024) ("any preemption inquiry begins with the presumption that federal law does not override the historic police powers of the States, without the clear and

---

[31] Order, ECF No. 95 at 16-17 (cleaned up).

manifest intent of Congress") (cleaned up); *Kondash v. Kia Motors Am., Inc.*, No. 1:15-CV-506, 2016 WL 11246421, at *23 (S.D. Ohio June 24, 2016).

Here's what that means in practice.  Novartis does not, and cannot, meet its burden to "show a clear and manifest congressional intent to overcome the presumption against preemption," by merely "demonstrat[ing] ambiguity."  *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 693 (3d Cir. 2016).  Similarly, in applying the "presumption against preemption," "[i]f confronted with two plausible interpretations of a statute, the court has 'a duty to accept the reading that disfavors pre-emption.'"  *Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1099 (D.N.M. 2017) (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 432 (2005)).  And in "keeping with this presumption, when there is doubt about preemption, the tie goes to the state." *AbbVie, Inc. v. Fitch*, 152 F.4th 635, 645 (5th Cir. 2025) (cleaned up).  The presumption against preemption applies to conflict preemption claims.  *Id.* at 648; *Dr. A. v. Hochul*, 586 F. Supp. 3d 136, 143 (N.D.N.Y. 2022).

### 2.1.   Section 311 does not entitle contract pharmacies to 340B prices

Novartis alleges that Section 311 "add[s] contract pharmacies to the federal 340B statute as a sixteenth type of covered entity that must be offered 340B prices."[32]  This Court previously found this argument had merit because under S.B. 69, a "340B entity" is not equivalent to "covered entities" as defined in the 340B statute.

The Legislature amended Section 311 after this Court's ruling.  Section 311 no longer uses the term "340B entity," it now uses the term "340B covered entity."  And Section 311 now provides that "340B covered entity" "means the same as the term 'covered entity' is defined in 42 U.S.C. Sec. 256b(a)(4)."  Utah Code § 31A-46-311(1)(a).  Accordingly, in Section 311, a

---

[32] Compl. ¶ 101.

"340B covered entity" is equivalent to "covered entities" as defined in the 340B statute.  Section 311 therefore does not add contract pharmacies as a type of Covered Entity that must be offered 340B prices.  Novartis' claim should be dismissed.

Next, Novartis alleges that Section 311 "is a quintessential drug-pricing statute."[33]  This Court has already rejected this argument, finding that Section 311 regulates drug distribution and "does not change or add to the pricing requirements for manufacturers under the 340B Program."[34]

Novartis further alleges that Section 311 "conflicts with federal law because it requires manufacturers to provide 340B pricing where the federal statute does not," because the "340B statute does not require manufacturers" to deliver to multiple contract pharmacies.[35]  This argument fails for two reasons.  First, the Supreme Court has rejected this exact type of preemption argument: "In *Dublino,* we rejected a pre-emption challenge to a state statute that imposed employment requirements as conditions for continued eligibility for AFDC benefits that went beyond the federal requirements."  *Walsh*, 538 U.S. at 666.

Second, the reason Section 340B does not explicitly require Novartis to deliver to multiple contract pharmacies is because "Section 340B is . . . silent about delivery conditions." *Novartis*, 102 F.4th at 460.  And "[c]ongressional silence will not be presumed to mandate preemption."  *Paul v. Monts,* 906 F.2d 1468, 1475 n.8 (10th Cir. 1990).  *See also Weiser*, 2025 WL 3041825, at *8; *Novartis v. Frey*, No. 1:25-CV-00407-JCN, 2025 WL 2813787, at *11 (D. Me. Sept. 23, 2025) (explaining that nothing in 340B suggest Congress intended to limit the number of patients for whom Covered Entities may prescribe drugs at the discounted rate, or to

---

[33] Compl. ¶ 99.
[34] Order at 15, 17-18.
[35] Compl. ¶ 101.

limit 340B drugs to patients living in the immediate vicinity of a single in-house or designated contract pharmacy). Utah can regulate in that gap regarding delivery left open by congressional silence. And Section 311 does not alter the 340B Program's limitation that only Covered Entities are entitled to purchase drugs at the 340B price, whereas contract pharmacies are not entitled to purchase drugs at 340B pricing.

A theme present throughout Novartis' Complaint is Novartis' gripe with the replenishment model. But this doesn't establish an actual conflict. The replenishment model is not illegal under federal law. HRSA has long recognized as much, stating that "[t]here is no requirement for a separate (physical) inventory for drugs purchased at a 340B discount, because a separate data system will be used to verify appropriate dispensing." 1996 Guidance at 43,554. HRSA further recognized that a "separate inventory is a wasteful concept with respect to time, space and money. Further, it provides little if any additional security." *Id.* As the replenishment model fits within the 340B Program, Novartis' Complaint does not make a clear explanation as to how a Utah Covered Entity's use of the replenishment model means that Section 311 is preempted. Novartis fails to plausibly allege that it is Congress' "clear and manifest" intent to preempt states from regulating in this area. The Court should dismiss Novartis' conflict preemption claim.

### 2.2.    Utah's enforcement of delivery does not conflict with HHS' enforcement of 340B

Novartis next claims that Utah's enforcement of Section 311 conflicts with federal enforcement of Section 340B.[36] This claim fails because Section 311 regulates different issues from what Section 340B regulates, and HRSA does not have jurisdiction over what Section 311 regulates.

---

[36] Compl. ¶ 143.

16

Start with what HRSA's jurisdiction.  HRSA's enforcement only covers matters addressed in the Section 340B statute, such as diversion, duplicate discounts, or overcharging.  *See* 42 U.S.C. § 256b(d)(3).  HHS promulgated rules regarding the Administrative Dispute Resolution process for Section 340B.  In 42 C.F.R. § 10.21, HHS outlined the only three types of claims that could be brought in the Section 340B ADR system: 1) overcharges; 2) duplicate discounts; and 3) diversion.  The Eighth Circuit observed as much, stating that "[w]hen payment, pricing, diversion, or discount disputes arise between manufacturers and covered entities, 340B mandates parties first go through HHS's dispute resolution process to resolve the issue." *McClain*, 95 F.4th at 1142 (citing 42 U.S.C. § 256b(d)(3)).

Compare that to what HHS doesn't have jurisdiction over.  *Novartis* and *Sanofi* established that HHS does not have enforcement authority over contract pharmacy arrangements and delivery.  HHS tried to regulate those issues.  It issued an advisory opinion, and then a violation letter, declaring that manufacturers must deliver to unlimited contract pharmacies. *Novartis*, 102 F.4th at 458-59.  Federal courts concluded that HHS had no authority to address these manufacturer policies at issue in this case, policies regarding delivery and multiple contract pharmacy arrangements.  *Sanofi*, 58 F.4th at 707 ("by trying to enforce" delivery of "Section 340B drugs to an unlimited number of contract pharmacies," HHS "overstepped the statute's bounds").

Which is what Section 311 regulates.  Section 311 prohibits manufacturers from interfering with contracts between Covered Entities and pharmacies, and restricting delivery to multiple contract pharmacies.[37]  As *Sanofi* made clear, Section 340B is silent on these issues. And Section 311 "does not impose penalties for violations of Section 340B," like overcharges,

---

[37] Compl. ¶¶ 13, 26, 100.

diversion, or duplicate discounts. *AbbVie, Inc. v. Fitch*, 152 F.4th 635, 647-48 (5th Cir. 2025). Section 311's "enforcement scheme therefore does not concern the same subject matter as Section 340B and cannot be said to conflict with it." *Id.* at 648 (cleaned up).

Novartis further argues that enforcement of Section 311 will require Utah officials to answer "federal questions."  Novartis poses a hypothetical of a manufacturer refusing to deliver 340B drugs to a contract pharmacy because the manufacturer has "evidence" of diversion.[38] Novartis then argues that if Utah enforced Section 311 in that situation, Utah officials would have to analyze whether a Covered Entity engaged in diversion, which is a federal issue.

This argument fails.  A Utah official would not have to determine whether diversion occurred because there is no federal statutory defense for a manufacturer having mere "evidence" of diversion.  Rather, HRSA must determine whether there has been diversion and HRSA determines whether to impose any sanction on the Covered Entity, including whether to remove the Covered Entity from the program.  Until HRSA makes such determination, the manufacturers have no defense under Section 340B.  Because a manufacturer's evidence of diversion is not a federal defense, Utah officials do not have to adjudicate any federal issues.

Under the 340B statute, the imposition of sanctions against Covered Entities is determined by HHS.  42 U.S.C. § 256b(d)(2)(B)(v).  HHS can impose sanctions against a Covered Entity only after an audit and notice of hearing.  *Id.* § 256b(a)(5)(D); § 256b(d)(2)(B)(v)(I); *PhRMA v. Fitch*, No. 1:24-CV-160-HSO-BWR, 2024 WL 3277365, at *2 (S.D. Miss. July 1, 2024).  And HHS can only remove a Covered Entity from the 340B Program if HHS determines that a Covered Entity's diversion was systematic, egregious, and intentional. 42 U.S.C. § 256b(d)(2)(B)(v)(II); *Fitch*, 2024 WL 3277365, at *2.  Congress granted HHS the

---

[38] Compl. ¶ 110.

18

exclusive authority to determine whether diversion occurred, and whether to remove a Covered Entity for diversion. Congress did not grant manufacturers the ability to remove Covered Entities from the 340B Program, and Congress did not grant manufacturers any defenses to state regulations of delivery outside of HHS' determinations.

HRSA has made clear that even if a manufacturer has evidence of a 340B violation, the manufacturer must still deliver to a Covered Entity "until the entity is found guilty of prohibited activity and a decision is made to remove the entity from the covered entity list." Manufacturer Audit Guidelines and Dispute Resolution Process, 61 Fed. Reg, 65,406, 65,408 (Dec. 12, 1996) (hereinafter, "HRSA Audit Guidelines"). The U.S. District Court for the District of Columbia said the same thing in *Oregon Health & Science University v. Engels*, 2025 WL 1707630 (D.D.C. June 17, 2025). There, the court discussed the audit procedures under Section 340B and stated: "These procedures do not affect the status quo of the 340B Program for the parties: . . . During the audit process, the manufacturer must continue to sell covered outpatient drugs at the section 340B ceiling price to the covered entity being audited." *Id.* at *3.

Therefore, there is no federal statutory defense to cutting off delivery based on "evidence" of diversion. To enforce Section 311, a Utah official would determine whether a manufacturer refused to deliver a 340B drug purchased by a Covered Entity to a contract pharmacy. A Utah official enforcing Section 311 does not adjudicate whether diversion occurred. HRSA does. Section 311 therefore does not intrude on HHS' enforcement authority of Section 340B.

That's why the *Morrisey* court got it wrong. In *PhRMA v. Morrisey*, 760 F. Supp. 3d 439, 454 (S.D.W. Va. 2024), the district found that West Virginia's law was likely preempted because state actors would be called upon to determine questions of federal law. But this finding was

based on an incorrect reading of Section 340B. The *Morrisey* court stated, "Suppose, as Novartis says, a drug manufacturer declines to deliver a drug at the 340B price over concerns that the drug is being diverted to non-patients in violation of federal law. Under these circumstances, the drug manufacturer is relying on *federal* law as a reason for not delivering a drug at the 340B price." *Id.* at 454. The *Morrisey* court did not cite to any federal law that establishes a federal defense for a manufacturer declining to deliver a 340B drug based on "concerns" of diversion. The court's reasoning was based on an incorrect assumption regarding the 340B statute.

The court in *AbbVie v. Skrmetti* picked up on how the *Morrisey* court's reasoning was incorrect. No. 3:25-CV-00519, 2025 WL 1805271 (M.D. Tenn. June 30, 2025). The *Skrmetti* court noted that the manufacturers could not explain "how a manufacturer's suspicion of 'diversion' of 340B-discounted drugs, *per se*, would constitute a defense to a state claim based on a violation of" Tennessee's law. *Id.* at *19. The court correctly noted that "[e]nforcement of the penalties and mechanisms for addressing diversion would instead be pursued—entirely separately—through the federal ADR system." *Id.* The court directly addressed *Morrisey* and explained its faulty reasoning:

> *Morrisey* provides no support for its presumption that the 340B program authorizes drug manufacturers to simply "restrict distribution at the 340B price because of diversion concerns." Rather, manufacturers apparently must be able to articulate reasonable cause for such concerns, seek an audit, and pursue informal dispute resolution and then resolution of a diversion dispute through ADR.

*Id.* at *19 n.11 (quoting *Morrisey*, 760 F. Supp. 3d at 458).

The *Skrmetti* court correctly understood how 340B operates and thus found that Tennessee's law did not intrude of federal enforcement of Section 340B. For those same reasons, Novartis here fails to plausibly allege that Section 311 stands as an obstacle to Section 340B.

This is particularly so when Novartis' claim relies on a hypothetical scenario that Novartis speculates could possibly occur at some unknown point in the future. Novartis' hypothetical does not establish a conflict preemption claim. *Chamberlan*, 314 F. Supp. 2d at 957 ("Speculative or hypothetical conflict is not sufficient") (citing *Cipollone,* 505 U.S. at 516). Novartis does not meet its burden to demonstrate that Section 311 "actually conflicts with federal law." *Cipollone*, 505 U.S. at 516.

Novartis' claim that state enforcement of delivery regulations conflicts with HRSA's enforcement of Section 340B essentially seeks to place federalism in a Catch-22. According to Novartis, HRSA cannot regulate Novartis' contract pharmacy restrictions because that is a delivery issue and HRSA has no statutory authority to regulate delivery. *Novartis*, 102 F.4th 452. But also according to Novartis, States cannot regulate contract pharmacy restrictions because HRSA has the exclusive statutory authority to regulate the issue. It is time for this gamesmanship to end. Novartis' claim should be dismissed.

2.3.    Novartis can obtain claims data consistent with federal law

Finally, Novartis claims that Section 311 prohibits Novartis from collecting claims data it needs to implement Section 340B requirements. Novartis is incorrect. Section 311 prohibits a drug manufacturer from

> requir[ing] a 340B covered entity or a contracted pharmacy to submit any claim data, utilization data, or information about a 340B covered entity's contracts with a third-party, unless the data or information sharing is required by federal law, as a condition for allowing:
>> (A)the acquisition of a 340B eligible drug by a 340B covered entity; or
>> (B)delivery of a 340B eligible drug to a 340B covered entity or a contracted pharmacy[.]

Utah Code § 31A-46-311(2)(b)(ii).

Section 311 is not an outright prohibition on data collection. Section 311 only prohibits manufacturers from conditioning receipt of a 340B drug on the provision of data. Moreover, Section 311 does not prohibit manufacturers from requiring Covered Entities to submit "data or information" that "is required by federal law." *Id.* Therefore, Section 311 does not impede a manufacturer from obtaining data it is entitled to under federal law. Novartis cannot show that Section 311 conflicts with federal law.

Novartis does not plausibly allege that Section 311 stands as an obstacle to Novartis accessing HRSA's ADR process. HRSA has established an alternative dispute resolution process available for Covered Entities and manufacturers to have HRSA adjudicate claims of overcharges, duplicate discounts, and diversion. 42 U.S.C. § 256b(d)(3). To bring a claim against a Covered Entity through the ADR process, a manufacturer must first audit a Covered Entity. *Id.* § 256b(a)(5)(C). And for HRSA to approve a manufacturer's request to audit a Covered Entity, a manufacturer must show to HRSA "reasonable cause" that a Covered Entity violated Section 340B.[39] HRSA Audit Guidelines at 65,410.

"Reasonable cause" is a low standard. HRSA defines "reasonable cause" as to mean a reasonable person could believe that a Covered Entity may have violated a requirement of Section 340B. HRSA Audit Guidelines at 65,409. And HRSA has explained what specific evidence could demonstrate reasonable cause: "Significant changes in quantities of specific drugs ordered by a covered entity and complaints from patients/other manufacturers about activities of a covered entity may be a basis for establishing reasonable cause." *Id.* at 65,406.

Novartis can access the ADR process without having to condition delivery based on continually receiving all claims data from Covered Entities. HRSA determines whether the

---

[39] Compl. ¶ 35.

manufacturer has shown reasonable cause. *Id.* Therefore, HRSA's guidance on what evidence can show reasonable cause is determinative here. HRSA has never said receiving all claims data as a condition of delivery is necessary to establish reasonable cause. And according to HRSA, there are multiple types of evidence other than claims data by which reasonable cause can be established. Since demonstrating reasonable cause can "otherwise be accomplished" without conditioning delivery on receipt of all claims data, Section 311 is not preempted. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

Novartis' Complaint does not plausibly allege that these types of evidence are insufficient to establish reasonable cause. Nor does Novartis allege that it does not have access to that type of information. Section 311 thus does not impede Novartis from accessing 340B's ADR process. Novartis' claim should be dismissed.

Courts that properly understand HRSA's guidance on establishing reasonable cause have rejected drug manufacturers' claims. In *Skrmetti*, drug manufacturer AbbVie argued that manufacturers will not be able to show "reasonable cause" unless they are permitted to condition delivery based on receiving all claims data from Covered Entities and their contract pharmacies. 2025 WL 1805271. The court found that the "reasonable cause" standard is "not overly burdensome" and does not "present any barriers to a manufacturer's ability to perform an audit of a covered entity." *Id.* at *15 (quoting 340B Drug Pricing Program; Administrative Dispute Resolution Regulation, 89 Fed. Reg. 28,643, 28,646 (April 19, 2024) (hereinafter, "ADR Regulation"). Looking to HRSA's explanation of what shows reasonable cause, the court found that manufacturers can meet the reasonable cause standard "in various ways that require little evidence (and certainly do not require claims data)—for example, by pointing to '[s]ignificant changes in quantities of specific drugs ordered by a covered entity,' or by citing 'complaints from

patients/other manufacturers about activities of a covered entity.'" *Id.* (quoting HRSA Audit Guidelines at 65,406).

HRSA provided even more answers to the *Skrmetti* court. HRSA's guidance and the manufacturers' allegations showed that Tennessee's law was not an obstacle to the ADR process. The court noted that in the preceding five years, "HRSA has not denied a request for a manufacturer audit of a covered entity." *Id.* (citing ADR Regulation at 28,646)). The manufacturers' allegations (or lack thereof) were consistent with HRSA's observations. The manufacturers in *Skrmetti* "presented no evidence that they or other drug manufacturers have ever been denied the ability to conduct an audit upon request or that they have been required to submit the kind of claims data they claim to need in order to substantiate a request for an audit." *Id.* at *16. "Rather, claims data is more likely to be precisely the documentation that would be reviewed *in the course of conducting an audit.*" *Id. See also PhRMA v. Bailey*, No. 2:24-CV-04144-MDH, 2025 WL 644281, at *3 (W.D. Mo. Feb. 27, 2025) ("[C]ondition[ing] the sale of 340B drugs on transfer of data collected at the expenses and effort of covered entities would be directly contrary to the 340B statute's provision that audits occur only at the expense of the Secretary or manufacturer.").

Like in *Skrmetti*, the allegations in Novartis' Complaint demonstrate that Section 311 poses no obstacle to Section 340B. Novartis does not allege that it has used claims data to establish "reasonable cause" to audit a Covered Entity when Novartis has conditioned delivery on receiving claims data. Conversely, Novartis does not allege that it has been denied a request to audit a Covered Entity when Novartis has not received claims data.

From 2010 to 2020, Novartis recognized unlimited contract pharmacies arrangements, and did not condition delivery on receiving claims data.[40]  Novartis effectively complied with what Section 311 now requires.  Novartis does not allege that, during this decade, the lack of claims data was an obstacle to auditing a Covered Entity.  Specifically, Novartis does not allege that it wanted to audit a Covered Entity, but could not establish reasonable cause without all claims data.  Novartis' Complaint demonstrates that complying with Section 311 presents no obstacle for Novartis accomplishing Section 340B's requirements.  *See Novartis Pharms. Corp. v. Frey*, No. 1:25-CV-00407-JCN, 2025 WL 2813787, at *12 (D. Me. Sept. 23, 2025) ("The 340B program and the audit process have existed for many years, but Plaintiffs have not identified cases where a manufacturer had requested but been denied an audit due to a lack of relevant claims data.").

Moreover, from 2020 to 2025, Novartis asked (without requiring) Covered Entities to give Novartis claims data.[41]  Some did, some didn't.[42]  Novartis does not allege that during this five-year period, for the Covered Entities that gave Novartis claims data, Novartis established reasonable cause to initiate an audit.  On the other hand, Novartis does not allege that for the Covered Entities that didn't give Novartis claims data, Novartis was unable to establish reasonable cause for an audit.  Novartis conditioning delivery on receiving claims data simply has no effect on Novartis being able to audit a Covered Entity.  Novartis thus does not plausibly allege that Section 311 stands as an obstacle to Section 340B.

Novartis may point to the opinions in *Morrisey* and *AbbVie Inc. v. Drummond*, No. CIV-25-1156-PRW, 2025 WL 3048929 (W.D. Okla. Oct. 31, 2025).  The court in *Morrisey* found that

---

[40] Compl. ¶¶ 41, 57.
[41] Compl. ¶¶ 57-58, 61.
[42] Compl. ¶ 67.

West Virginia's law, which is similar to Section 311, created an obstacle to the manufacturers demonstrating the "reasonable cause" necessary to conduct an audit. 760 F. Supp. 3d at 453. In *Drummond*, 2025 WL 3048929, at *7, the court found Oklahoma's law stands in direct conflict with the 340B Program's dispute resolution mechanism. The analysis and conclusion in *Morrisey* and *Drummond* were incorrect for two reasons.

First, those courts did not address HRSA's guidance that explained the ways that reasonable cause can be demonstrated. As noted above, HRSA stated that reasonable cause can be shown by "[s]ignificant changes in quantities of specific drugs ordered by a covered entity and complaints from patients/other manufacturers about activities of a covered entity may be a basis for establishing reasonable cause." HRSA Audit Guidelines at 65,406. The *Morrisey* court did not mention HRSA's articulation of what information constitutes reasonable cause, and this guidance is dispositive to demonstrating that manufacturers do not need to condition delivery on requiring all claims data continually. The *Drummond* court made the same error. The court asked: "without suspicion-raising claims data, how would a manufacturer know to ever ask for an audit? The claims data, as far as the Court can tell, would be *the* way to detect possible diversion or double-dipping on discounts." 2025 WL 3048929, at *7. At no point did the *Drummond* court acknowledge HRSA's explanation of other ways to demonstrate reasonable cause (which answers the court's question), let alone explain why those ways are insufficient to access the ADR process.

Second, the *Morrisey* and *Drummond* courts overlooked another key observation from HRSA: that HRSA has never denied a manufacturer's request to audit a Covered Entity. "HRSA has not denied a request for a manufacturer audit of a covered entity." ADR Regulation at 28,646. Consistent with HRSA's observation, the *Skrmetti* court further noted that AbbVie

presented nothing to show that HRSA has ever denied AbbVie "other drug manufacturers . . . the ability to" audit "or that they have been required to submit the kind of claims data they claim to need in order to substantiate a request for an audit." 2025 WL 1805271, at *16. *See also PhRMA v. Frey*, No. 1:25-CV-00469-JCN, 2026 WL 184504, at *14 (D. Me. Jan. 23, 2026) ("But neither Plaintiff nor the manufacturers have demonstrated that claims data are necessary to obtain an audit or that the proof necessary to obtain an audit is particularly onerous.").

The *Morrisey* and *Drummond* courts did not cite any actual examples of a manufacturer being denied a request to audit. But conflict preemption requires "the identification of *actual* conflict." *Geier*, 529 U.S. at 884 (emphasis added). Those courts accepted the manufacturers' speculation that the state laws might stand as an obstacle to Section 340B. A speculative conflict is not sufficient to state a preemption claim. *Chamberlan*, 314 F. Supp. 2d at 957 (citing *Cipollone,* 505 U.S. at 516). Novartis' claim should therefore be dismissed.

## CONCLUSION

Novartis has not shown that Section 340B preempts Section 311. The two laws can comfortably co-exist. Because Novartis has failed to adequately state a preemption claim, this Court should grant Defendants' Motion for Judgment on the Pleadings.

DATED: February 27, 2026

OFFICE OF THE UTAH ATTORNEY GENERAL

*/s/ Jason Dupree*
LANCE SORENSON
JASON DUPREE
DAVID WOLF
Assistant Utah Attorneys General
*Counsel for Defendants*

## CERTIFICATION OF WORD COUNT:

I, Jason Dupree, certify that this Motion for Judgment on the Pleadings contains 7,704 words (excluding the caption, table of contents, table of authorities, and signature block) and complies with DUCivR7-1(a)(4).

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, I served the foregoing, *Defendants' Motion for Judgment on the Pleadings,* using the Court's electronic filing system, which gave notice to the following:

Carissa A. Uresk
PARR BROWN GEE & LOVELESS
101 S 200 E STE 700
SALT LAKE CITY, UT 84111
801-532-7840
Email: curesk@parrbrown.com

Alexander V. Sverdlov
HOGAN LOVELLS US LLP
555 13TH ST NW
WASHINGTON, DC 20004
(202) 637-5600
Email: alexander.v.sverdlov@usdoj.gov

David C. Reymann
PARR BROWN GEE & LOVELESS
101 S 200 E STE 700
SALT LAKE CITY, UT 84111
(801) 532-7840
Email: dreymann@parrbrown.com

Jacob T. Young
HOGAN LOVELLS US LLP
555 13TH ST NW
WASHINGTON, DC 20004
202-637-2096
Email: jake.young@hoganlovells.com

Jessica L. Ellsworth

HOGAN LOVELLS US LLP
555 13TH ST NW
WASHINGTON, DC 20004
(202) 637-5600

Marlan J. Golden
HOGAN LOVELLS US LLP
555 13TH ST NW
WASHINGTON, DC 20004
202-637-5600
Email: marlan.golden@hoganlovells.com

Robert S. Clark
PARR BROWN GEE & LOVELESS
101 S 200 E STE 700
SALT LAKE CITY, UT 84111
(801) 532-7840
Email: rclark@parrbrown.com

Susan Cook
HOGAN LOVELLS US LLP
555 13TH ST NW
WASHINGTON, DC 20004
202-637-6684
Email: susan.cook@hoganlovells.com

Kade N. Olsen
PARR BROWN GEE & LOVELESS
101 S 200 E STE 700

28

SALT LAKE CITY, UT 84111                ASIA REID
801-532-7840                            Paralegal
Fax: 801-532-7750
Email: Kolsen@parrbrown.com


*/s/ Asia Reid*